COUNTY OF CHIPPEWA *vs.* ST. PAUL, STILLWATER & TAYLOR'S FALLS | 42  205
RAILROAD COMPANY.                                              | 42  301

### January 8, 1890.

**Taxes—Railway Land Grant—Effect of Trust-Deed.**—Lands embraced
in a railroad land grant, and exempt from ordinary taxation while held
by the corporation for whose benefit the grant was made, *held* to have be-
come subject to taxation, the entire beneficial interest of the corporation
having been conveyed by a trust-deed, to secure a specified charge upon
the lands exceeding their value, and the *cestuis que trustent* being empow-
ered, at their mere election, to take and appropriate the entire property
in satisfaction of their claims upon it, and so as to leave nothing to re-
vert to the grantor.

Case certified from the district court for Chippewa county, in pro-
ceedings to enforce payment of delinquent real-estate taxes.

*Moses E. Clapp,* Attorney General, and *Lyndon A. Smith,* for plain-
tiff.

*Young & Lightner,* for defendant.

DICKINSON, J.    The matter now to be considered has been certified
to this court, pursuant to the statute, by the Honorable C. L. Brown,
judge of the 16th judicial district, who, acting in place of the judge of
the 12th judicial district, determined, upon the case which is certified
to us for review, that the lands in question were taxable.    The princi-
pal controversy is as to whether by a trust-deed, Exhibit E in the
case, made by the St. Paul, Stillwater & Taylor's Falls Railroad Com-
pany on the 12th day of March, 1880, conveying the lands in ques-
tion to E. F. Drake and A. H. Wilder, in trust for the purposes therein
set forth, the corporation divested itself of the entire beneficial inter-
est in the property, so that it became taxable as the property of the
*cestuis que trustent.*

It appears from the case before us that long prior to the execution
of this trust-deed the corporation had issued and sold its bonds to
secure money for the construction of its road; such bonds being se-
cured by a mortgage or trust-deed of the railroad constructed or to
be constructed, of the railroad property in general, and of the land

grant.    Subsequently, by agreement with the bondholders, such bonds
were retired, the bondholders accepting in place of such bonds and
mortgage—*First*, new bonds of the company, to the amount of 60
per cent. of the former debt, secured by a new trust-deed of the rail-
road property and franchises; and, *second*, "preferred special land
stock," as it was called, to the amount of 40 per cent. of the former
debt, this being secured by a further trust-deed or second mortgage
upon the railroad property, and by a trust-deed of the land grant.
Thus the matter stood at the time of the transaction more immedi-
ately in question, March, 1880.    At that time the corporation nego-
tiated a sale of its railroad and railroad property to the St. Paul &
Sioux City Railroad Company, which sale was finally accomplished.
In order to free the railroad property from the incumbrance created
by the trust-deed securing the so-called "preferred special land stock,"
a new "special land stock," so called, was issued by the corporation
for the amount of the former preferred special land stock outstand-
ing, $204,900, of the par value of $100 per share; and this was se-
cured by the trust-deed, Exhibit E, executed to E. F. Drake and A.
H. Wilder.    The holders of the bonds and of the former preferred
special land stock received this new special land stock thus secured,
with a bonus of about 10 per cent. paid in cash, in exchange for their
former land stock, which was thus retired.    The following is a sum-
mary of such of the provisions of this trust-deed to Messrs. Drake
and Wilder as bear particularly on the matter in controversy:    It
recites the contemporaneous issue of this special land stock, of the
aggregate par value of $204,900, for the purpose of retiring that be-
fore issued.    It recites the agreement of the corporation that the net
cash receipts from the sale of the lands embraced in this deed should
be applied to the redemption and retirement of such special land
stock, and that such stock should at all times be receivable, at its par
value, in payment for any of said lands, at the current selling or ap-
praised value, which should not in any case be less than an average
price of six dollars per acre, except by order of a majority of the
holders of said stock.    For the declared purpose of securing the per-
formance of such agreements, the corporation, by this instrument,
conveyed to the trustees named, parties of the second part, and to

their successors, all the land of the corporation in the counties of Chippewa and Renville, amounting to some 41,926 acres; the same being lands granted to the corporation to aid in the construction of its road. Among the conditions and purposes of the trust, as further set forth in the instrument, are the following: The trustees were to hold, manage, bargain, and sell any and all of said lands, prescribe the price at which they should be sold,—the same not to be less than an average of six dollars per acre, unless on order of a majority of the holders of such stock. The proceeds of the sales of the land were to be devoted—*First*, to the payment of the expenses attending the trust; *second*, at stated semi-annual periods, if the proceeds were not sufficient to pay dividends of at least 1 per cent. on this stock, they should be carried to the credit of a redemption fund. If they were sufficient to pay a dividend of at least 1 per cent., they should be so paid,—such payment, however, not to exceed a dividend of 5 per cent. in any six months, the surplus if any to be carried to the credit of the redemption fund; *third*, whenever the redemption fund should be sufficient to take up 10 or more shares of stock at a price not greater than its par value, it should be applied in paying off and retiring stock, in a manner particularly pointed out. It is further provided in this instrument that when all the special land stock shall have been redeemed by the operation of the redemption fund, with interest thereon as provided therein, and the expenses of the trust shall have been paid, this conveyance shall become void, and the res-. idue of lands, moneys, or contracts shall revert to the corporation. It appears that there is still outstanding about $25,000 of this same stock, and that there remain undisposed of 2,500 acres of the trust lands. It was found by the court below, upon evidence which was sufficient to justify the finding, that at the time of the execution of this trust-deed the value of the land conveyed did not exceed four dollars an acre,—a sum considerably less than would be necessary to be realized in order that the proceeds of the land should pay off this so-called "land stock," irrespective of dividends. The court also found as a fact that at the time of the execution of this trust-deed, and of the issuance of this land stock, it was not the expectation nor intention of the parties that there would or should be any residue of

lands, or of the proceeds of the lands, to come to the corporation; that the corporation intended to and did grant to the trustees named, for the use and benefit of the holders of the land stock, the entire beneficial interest in these lands,—the corporation retaining a mere form of ownership and right of redemption, without any expectation or intention that its right should be made available for any purpose. It was therefore considered that the lands were taxable.

If the finding of the court as to the intention of the parties in this transaction was justified, and if this trust was susceptible of being administered, according to its terms, so that, at the mere will of the *cestuis que trustent*, the whole property should be appropriated to the satisfaction of their claims upon it, the conclusion of the court was right. *St. Paul & Sioux City R. Co.* v. *McDonald*, 34 Minn. 182, (25 N. W. Rep. 57;) *St. Paul & Sioux City R. Co.* v. *Robinson*, 40 Minn. 360, (42 N. W. Rep. 79.) In its essential and controlling features, this case is substantially like that of *St. Paul & Sioux City R. Co.* v. *Robinson*, last cited. Taking into consideration the value of these lands, it seems apparent that by the terms of the trust-deed the corporation placed it in the power of the holders of this land stock to at once distribute the whole property among themselves, to satisfy their demands, or to sell it as speedily as possible at its actual value, which not only would leave nothing to revert to the corporation, but would fail to fully satisfy the land stock, with its accumulating dividends. The stock was at all times receivable at its par value in payment for lands at the current selling or appraised value, which should not in any case be less than an average price of six dollars per acre, "*except by order of a majority of the holders of said stock.*" If the majority of the stockholders were to so *order*, the price might have been put at the real value, at that time, of four dollars per acre; and the corporation, which had reserved to itself no voice in the matter, could have had no reason for seeking to restrain the carrying into effect of such an order fixing the price at the actual value of the land. Such action would not have wronged the corporation, would have involved no element of fraud, and would have afforded no ground for equitable interference at the suit of the company. Nor does it appear that from that time to the present there has been any change, such as to

have affected the rights of the parties in this respect, in the relative value of the lands as compared with the amount of the outstanding land stock.   It seems apparent, then, that at the time of the conveyance of these lands in trust, the *cestuis que trustent* acquired, and the company parted with, the entire beneficial interest in the property; and that by the very terms of the grant the beneficiaries were empowered to surrender their stock and take the land, or to cause it to be sold for their benefit; and that, whether the trust should be carried into effect in one way or in the other, there would be nothing to revert to the grantor.   The holders of this stock, as we understand, could look only to this land for its satisfaction; and it must be assumed that either by direct appropriation or by sale it would be applied to their benefit.   That the stockholders did not elect at once to make such application, or did not succeed at once or speedily in selling the land, does not modify the effect of the fact upon which the claim of the state rests, that the entire beneficial interest in these lands had passed to the holders of this land stock.   The court was justified in finding that the intention of the parties was to accomplish that which was the natural and immediate effect of the very terms of the agreement and grant.

We have referred to the value of the lands, as having a bearing upon the case.   It is not to be understood that we deem the actual value in such cases to be of controlling importance; for the intention of the parties should be considered with reference to the value which the parties may have *supposed* the property to bear.   But this case was such that the trial court may have been justified in the conclusion that the parties to the transaction did not estimate the available value of the land beyond what has been found to have been its actual value.   The testimony of Mr. Drake and Mr. Jewett may be accepted as true, showing that such lands as have been sold have actually brought an average price of six dollars an acre.   And so of the testimony of Mr. Drake, that he has always regarded the land as of that value.   "Not," (as he adds,) "that they could be sold out in a day at that, or, perhaps, in a month or a year, but the average value, as people would buy them and as they would want them."   The present value of unproductive property is necessarily less than

the sum for which it may be sold in the course of a period of years. And, again, the available value of this land, so far as could concern this corporation, was to be considered with regard to the speediness with which it could be disposed of; for it was charged with this land stock, which was entitled to receive dividends out of the proceeds of the sales.

In a very important particular this case is distinguishable from *Sioux City & St. Paul R. Co.* v. *Robinson,* 41 Minn. 452, (43 N. W. Rep. 326,) and the distinction is pointed out in the opinion in that case, wherein the difference between it and the case of *St. Paul & Sioux City R. Co.* v. *Robinson,* 40 Minn. 360, (42 N. W. Rep. 79,) is referred to. The case now under consideration is substantially like that last cited, in that the trust-deed in question, and the land-stock certificates, were executed with a view to their acceptance by particular persons, the holders of the bonds and preferred special land stock previously issued, who were really the parties contracting directly with the corporation in this transaction. We see no reason why they should not be deemed to have participated with the corporation in the intention deducible from the transaction, that is, that the whole beneficial interest in the land should inure to them. The conclusion of the court below that the lands became taxable is sustained.

As respects the particular lands which are chargeable with taxes in this proceeding, it is claimed that the order of the court is in terms so broad as to cover lands which, as we understand from the concession in the brief on the part of the state, are not claimed to be included in this proceeding. It is conceded, as we understand, that judgment should be entered only against the lands and for the taxes named in Exhibit B, found on page 93 and following pages of the paper book. The order for judgment will be modified accordingly.

It is also claimed that a statutory penalty of 10 per cent. is charged in the list above referred to, and in the order of the court for judgment, and that this is erroneously included under our decision in *County of Redwood* v. *Winona & St. Peter Land Co.,* 40 Minn. 512, (42 N. W. Rep. 473.) It is, perhaps, inferable from the brief on the part of the state that this, too, is admitted; but this is not entirely

clear, nor do we understand the facts to be so fully disclosed by the record before us as to enable us to apply to this case the rule declared in the decision last cited; and, as this matter does not seem to have been called to the attention of the district court, it is left to be determined by that court, upon application for a modification of the order for judgment in this particular.

NOTE. Two other cases, in one of which the St. Paul, Stillwater & Taylor's Falls R. Co., and in the other the Minnesota Land & Investment Co., objected to the taxes sought to be enforced, were certified to this court, and were argued at the same time with the foregoing case, and by the same counsel, and were decided in accordance with the foregoing opinion.