STATE OF NEBRASKA, EX REL. GEO. H. HASTINGS, ATTORNEY GENERAL, v. HOWARD B. SMITH.

[FILED JUNE 11, 1892.]

1. **Metropolitan Cities:** FIRE AND POLICE COMMISSIONERS: STATUTES. The act approved April 9, 1891, by which section 145 of chapter 12a, Compiled Statutes of 1889 (charter of the city of Omaha), was so amended as to provide for the appoint-

ment as fire and police commissioners of said city of members of the three parties casting the largest vote at the last city election, does not take effect until the expiration of the terms of office of the two commissioners who were appointed May, 1889.

2. ————: ————: REMOVAL. The general provision contained in section 172 of the charter of the city of Omaha, for the removal of officers of the city, upon charges, by the district court, is not exclusive.

3. ————: ————: ————: CONSTITUTIONAL LAW. The provision of section 12, article 5, of the constitution, empowering the governor to remove all officers appointed by him, applies only to officers mentioned in the constitution.

4. ————: ————: ————: DISCRETION. Where by law there is no fixed term of office and the incumbent holds during the pleasure of the appointing power, the power of removal is discretionary and may be exercised without notice or hearing.

5. ————: ————: ————: SPECIFIC CHARGES: NOTICE. Where the incumbent is elected or appointed for a definite term, and is removable only for specified cause, the power of removal cannot be exercised until there has been preferred against him specific charges of which he shall have notice, and an opportunity afforded him to be heard in his defense.

6. ————: ————: ————: OFFICIAL MISCONDUCT: CHARGES: DEFENSE. By the charter of the city of Omaha the governor is authorized to remove members of the board of fire and police commissioners only for the cause named, viz., official misconduct and upon charges specifying the particular act or acts to be proved and an opportunity to be heard in their own defense.

7. ————: ————: ————. The question whether the power to remove is judicial in the sense that the officers named are entitled to have the question of cause therefor heard by the courts, and if not, whether the action of the executive can be reviewed by the courts, is not raised in this case and is not determined.

ORIGINAL proceeding in nature of *quo warranto*.

*Geo. H. Hastings, Attorney General, V. O. Strickler*, and *J. W. Edgerton*, for relator:

The executive may move without preferring charges, serving notice, or having a formal trial. (*State v. McGarry*, 21 Wis., 496; *Wilcox v. People*, 90 Ill., 186; *Eckloff v. Dist.*

State, ex rel. Att'y Gen'l, v. Smith.

*of Col.*, 135 U. S., 240 ; *Keenan v. Perry*, 24 Tex., 253.)
A constitutional question is clearly recognized, and where
the question is addressed to the discretion of the depart-
ment called upon to make the construction, the decision is
final. (*Wright v. Defrees*, 8 Ind., 298 ; *State v. Doherty*, 25
La. Ann., 119; *Att'y Gen'l, ex rel. Taylor, v. Brown*, 1 Wis.,
413; *People v. Stout*, 19 How. Pr. [N. Y.], 171.)  The
power to remove an officer is not a judicial power. (*People
v. Whitlock*, 92 N. Y., 191; *People v. Stout*, 11 Abb. Pr.
[N. Y.], 17; *People v. Mays*, 7 N. E. Rep. [Ill.], 660;
*Donahue v. County*, 100 Ill., 94; *Houseman v. Common-
wealth*, 100 Pa. St., 222; *State v. Oleson*, 15 Neb., 247;
*Smith v. Brown*, 59 Cal., 672; *People v. Hill*, 7 Id., 97;
*State v. Prince*, 45 Wis., 610; *Taft v. Adams*, 3 Gray
[Mass.], 126: *Ex parte Wiley*, 54 Ala., 226; *Keenan v.
Perry*, 24 Tex., 253; *Patton v. Vaughan*, 39 Ark., 211;
*Dullam v. Willson*, 53 Mich., 392.)  In granting a charter
to a metropolitan city the legislature has the right to de-
termine that the board of fire and police commissioners
should be non-partisan.  The reasons which may have in-
duced the legislature to pass such a law are not properly
a subject of inquiry. (Cooley, Const. Lim., 155; *Turner
v. Althaus*, 6 Neb., 55; *Bradshaw v. Omaha*, 1 Id., 16.)

An additional brief was filed in behalf of relator, in
which *Chas. Ogden* appears with those above named as
counsel, and the following contentions were urged: The
legislature has power to abolish or abridge the term of any
office not mentioned in the constitution. (*People v. Has-
kell*, 5 Cal., 357; *People v. Banvard*, 27 Id., 470 ; *State v.
Pyle*, 1 Ore., 149; *Bryan v. Cattell*, 15 Ia., 538; *Davis v.
State*, 7 Md., 151; *Conner v. Mayor*, 2 Sandf. [N. Y.], 355;
*Coffin v. State*, 7 Ind., 157 ; *Benford v. Gibson*, 15 Ala.,
521.)  Here is a power lodged in the governor.  It is for
him to say whether there is official misconduct. (*State v.
Doherty*, 25 La. Ann., 119; *People v. Mays*, 117 Ill., 257;
*People v. Platt*, 19 How. Pr. [N. Y.], 171 ; *State v. Mc-*

16            NEBRASKA REPORTS.      [Vol. 35

State, ex rel. Att'y Gen'l, v. Smith.

*Garry,* 21 Wis., 496; *Keenan v. Perry,* 24 Tex., 253.)
The question is one of constitutional interpretation. (*State
v. Yoist,* 25 La. Ann., 396; *State v. Abbott,* 6 S. Rep.
[La.], 805.)

*Lake, Hamilton & Maxwell, contra:*

Section 12 of article 5 of the constitution is not appli-
cable to fire and police commissioners of the city of Omaha.
The governor's power to remove such officers is deter-
mined and limited by sections 2448 and 2475 of the act
governing metropolitan cities. (Cons. Stats., sec. 2448,
2475; *State v. Seavey,* 22 Neb., 454.) The existence of
one of the causes for removal is a judicial question, and
must be determined by the judicial department of the state.
(*Page v. Hardin,* 8 B. Mon. [Ky.], 648; *Honey v. Gra-
ham,* 39 Tex., 1; *State v. Pritchard,* 36 N. J. L., 101;
*State v. Harrison,* 113 Ind., 434; *People v. Stuart,* 74
Mich., 411.) The governor cannot remove one of the fire
and police commissioners until (1) specific charges have
been made; (2) notice of such charges given; (3) an op-
portunity furnished the commissioner to be heard in his
own defense. (*Commonwealth v. Slifer,* 25 Pa. St., 23; *State
v. Seay,* 64 Mo., 89; *State v. Lusk,* 18 Id., 333; *Hogan v.
Carberry,* 4 W. L. Bul., 113; *State v. Hawkins,* 44 O. St.,
98; *Dullam v. Willson,* 53 Mich., 392; *Ham v. Board of
Police,* 142 Mass., 90; *State v. St. Louis,* 90 Mo., 19;
*Board of Aldermen v. Darrow,* 13 Colo., 460; *Biggs v.
McBride,* 17 Ore., 640; *Hallgrene v. Campbell,* 46 N. W.
Rep. [Mich.], 381; *Field v. Com.,* 32 Pa. St., 478.)

Post, J.

This is an original proceeding by the attorney general
against the respondent for the purpose of testing the title
of the latter to the office of member of the board of fire and
police commissioners of the city of Omaha. The material
part of the petition is as follows:

"That on or about the 2d day of May, 1890, Howard B. Smith respondent herein, was appointed by the Hon. John M. Thayer, who was at that time governor of the state of Nebraska, as a member of the board of fire and police commissioners of the city of Omaha, and thereupon entered into said office, and continued to occupy said office and to exercise the duties thereof until the 23d day of February, 1892. On the said 23d of February, 1892, the Hon. James E. Boyd, who was then and is now the governor of the state of Nebraska, by virtue of the authority vested in him by the constitution and laws of the state of Nebraska, removed the respondent for cause, from said office of fire and police commissioner of the city of Omaha.

"That on the 23d day of February, 1892, D. Clem Deaver was duly appointed and commissioned by the Hon. James E. Boyd, governor as aforesaid, a member of the board of fire and police commissioners of the city of Omaha to succeed Howard B. Smith, respondent; that he accepted said appointment and immediately took the oath of office and filed with the city clerk of the city of Omaha a good and sufficient bond as required by law, and claims the right to exercise the duties and to enjoy the privileges of said office.

"Notwithstanding the appointment of said D. Clem Deaver to said office, said Howard B. Smith, respondent, did on the 23d day of February, 1892, and has continuously since that time, without any legal warrant, claim, or right, used and exercised, and still does unlawfully use and exercise, the office of fire and police commissioner in the city of Omaha, in place of said Deaver, and claims to be a member of said board of fire and police commissioners in place of Deaver, and to have, use, or employ all the rights, privileges, and franchises of said office, to the damage and prejudice to the rights of said city of Omaha, and also against the peace of the state of Nebraska; that the said Deaver is a member of the independent party, one of

the three political parties casting the highest number of votes at the municipal election held in the city of Omaha in December, 1890.

"That prior to the appointment of said Deaver on the 23d day of February, 1892, as aforesaid, no member of the independent party had been appointed as a member of the board of fire and police commissioners of the city of Omaha as required by law, and that said Deaver is the only member of said board appointed who belongs to said party.

"Said relator therefore prays judgment that the respondent be declared not entitled to said office, and that he be ousted therefrom, and that D. Clem Deaver be declared entitled to said office and installed therein, to assume the execution of the duties thereof."

The answer, omitting formal and immaterial parts, is as follows.

" That in the month of May, 1887, the Hon. John M. Thayer, governor of the state of Nebraska, appointed Christian Hartman, George I. Gilbert, L. M. Bennett, and this respondent fire and police commissioners of the city of Omaha; that said Hartman and Gilbert were reputed to be and were members of one political party, to-wit, of the democratic party, and said Bennett and Smith of a different political party, to-wit, of the republican party ; that said Hartman and Bennett were appointed to serve for the term of four years; that said Gilbert and this respondent were appointed to serve for the term of two years; that all of said appointees duly qualified and entered upon the discharge of their duties as such commissioners and continued in the discharge of their duties until the month of May, 1889; that in said month of May, 1889, George I. Gilbert and this respondent were reappointed and duly commissioned by the Hon. John M. Thayer, governor of the state of Nebraska, to serve for a term of four years thereafter; that said Gilbert and this respondent duly qualified and entered upon the discharge

of their duties as fire and police commissioners of the city of Omaha, and have continued in the discharge of said duties down to the present time; that respondent's term of office does not expire until May 10, 1893.

"That in the month of May, 1891, the Hon. John M. Thayer, governor of the state of Nebraska, reappointed and commissioned Christian Hartman as fire and police commissioner of the city of Omaha for a term of four years, and appointed and commissioned Wm. Coburn, a member of the republican party, for the term of four years to succeed L. M. Bennett; that said Hartman and Coburn duly qualified and entered upon the discharge of their duties as fire and police commissioners of the city of Omaha, and have continued in the discharge thereof since said time.

"That on the 23d day of February, 1892, the Hon. James E. Boyd, governor as aforesaid, without authority of law and without cause therefor, assumed to remove this respondent from his said office of fire and police commissioner of the city of Omaha; that on and before said day there were no charges of any name or nature or of any description against this respondent filed in the office of the governor of the state of Nebraska, or in the office of any other officer of the state of Nebraska, or of the city of Omaha; that notwithstanding the absence of any cause for such action, and notwithstanding the provisions of the constitution and statutes of Nebraska, said Boyd on the 23d day of February, 1892, without any notice given this respondent and without giving this respondent any opportunity to be heard, wrote this respondent the following letter:

"'STATE OF NEBRASKA, EXECUTIVE DEPARTMENT,
"'LINCOLN, February 23, 1892.

"'*Howard B. Smith, Esq., Omaha, Neb.*—DEAR SIR: In accordance with the constitution and laws of the state of Nebraska, you are hereby notified that I have this day

removed you, for cause, from the office of fire and police commissioner for the city of Omaha, and have declared said office vacant.

    "'Yours truly,        JAMES E. BOYD,

                                    *"'Governor.'*

"And then and thereby assumed to remove this respondent arbitrarily from his said office; that letters of like import were also sent to said Gilbert and Hartman and Coburn; that thereupon said Boyd assumed, without authority of law, to reappoint on the 23d day of February, 1892, said Coburn to succeed himself, and to appoint one George W. Shields to succeed said George I. Gilbert, and to appoint one C. V. Gallagher to succeed Christian Hartman, and to appoint D. Clem Deaver to succeed this respondent."

To this answer a general demurrer has been filed by the state, thus presenting the real question involved, viz., the power of the governor under the charter of the city of Omaha to remove members of the board of fire and police commissioners for cause other than official misconduct, or for the cause named, without charges, and an opportunity to be heard in their own defense. The office in controversy was created by provision of the act approved March 30, 1887, entitled "An act incorporating metropolitan cities, and defining, regulating, and prescribing their duties, powers, and government," which, for convenience, will be referred to as the charter of the city of Omaha. Section 145 of said charter as enacted, as far as material to the question under consideration, is as follows:

" In each city of the metropolitan class there shall be a board of fire and police, to consist of the mayor (who shall be *ex-officio* chairman of said board) and four electors of said city, to be appointed by the governor. The governor shall appoint as the commissioners above, four citizens, not more than two of whom shall be of the political party; two of them, of different political party faith and allegiance, shall be designated in their appointment to serve for

two years, and the other two, also of different political party faith, shall be designated to serve for four years. And thereafter, at the expiration of said term, and each period of two years, the governor shall appoint two members of said board. For official misconduct the governor may remove any of said commissioners; and all vacancies in said board, by death, resignation, or removal, shall be filled by the governor for the unexpired term, and all vacancies from whatever cause shall be so filled that not more than two of the members of said board shall be of the same political party, or so reputed. All powers and duties connected with and incident to the appointment, removal, government, and discipline of the officers and members of the fire and police departments of the city, under such rules and regulations as may be prescribed by ordinance, shall be vested in and exercised by said board."

In 1891 this section was amended so as to provide that at least one of the members of said board shall belong to each of the three political parties casting the largest vote for city officers at the last preceding election. It is provided, however, by the section as amended that "The terms and powers of the members of said board heretofore appointed by the governor of the state shall not be affected or changed by any amendments hereto." If we understand the position of counsel for the state, they claim that this proviso was intended to have a prospective effect only; that the amendment took effect immediately upon its approval, without exception or reservation in favor of the members of the board as then constituted; that it should be construed, not as exempting the then members of the board from the operation, but as a limitation upon the power of future legislatures. The evident purpose of the provision for commissioners from the different parties is to remove the police department of the greatest city of our state from the influence of partisan politics. This object is one to be commended certainly, and to which the courts will give

effect when possible without violating the recognized rules of construction. The wisdom of a division of the powers and responsibilities of the board between the three parties will not be called in question. For the purposes of this case we will assume that the legislature has power to authorize the removal of the respondent, or any member of the board in order, to give place thereon to a representative of the independent party. It is plain to us, however, that they have not done so.

Construction, as defined by Dr. Leiber, is the "drawing of conclusions respecting subjects that lie beyond the direct expression of the text—conclusions that are within the spirit but not the letter of the text." Tested by this definition the language of the amendatory act leaves no room for construction. Respondent was appointed in May, 1889, for the term of four years. He was in office when the amendment took effect in 1891, and his term, in the language of the act, is not "affected or changed" thereby. The solution of the next question presented is attended with greater difficulty, viz., Are the provisions of the charter relating to the removal of members of the board of fire and police commissioners of the city of Omaha in conflict with the provisions of the constitution upon the subject? The constitutional provisions upon the subject are found in sections 10, 11, and 12 of article 5, entitled "Executive Department," as follows:

"Sec. 10. The governor shall nominate and, by and with the advice and consent of the senate (expressed by a majority of all the senators elected voting, by yeas and nays), appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise by law or herein provided for; and no such officer shall be appointed or elected by the legislature.

"Sec. 11. In case of a vacancy during the recess of the senate, in any office which is not elective, the governor

shall make a temporary appointment until the next meeting of the senate, when he shall nominate some person to fill such office; and any person so nominated, who is confirmed by the senate (a majority of all the senators elected concurring by voting yeas and nays), shall hold his office during the remainder of the term, and until his successor shall be appointed and qualified.

"Sec. 12. The governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office, and he may declare his office vacant, and fill the same as herein provided in other cases of vacancy."

It is claimed on one hand that the provision of section 12 is applicable to all officers appointed by the governor regardless of their character, and is, therefore, a limitation upon the power of the legislature, while on the other hand it is contended that it can have application only to officers named in or contemplated by the constitution.

The case of *Wilcox v. People*, 90 Ill., 186, relied upon by counsel for the state, is in many respects similar to this, and calls for especial notice in this connection. In 1869 an act was passed incorporating the West Chicago park commissioners. The members thereof were appointed by the governor for the term of seven years. They were given power, among other things, to lay out, govern, and manage parks; to pass ordinances for the government of the same; to levy special assessments upon property to be benefited, and to possess, in that regard, all the power then possessed by the city of Chicago in respect to public squares; to acquire property for said purpose by condemnation or otherwise, etc. The act further provides that the members thereof might be removed by the circuit court after trial and conviction upon sworn charges, etc. In 1870 the present constitution of that state was adopted, and which includes the provisions for appointment and removal by the governor, from which ours appear to have

been copied.   In 1877 the governor removed the relator
Wilcox and other members of said board for incompetency.
In determining the question of his power under the consti-
tution to remove officers the supreme court held, first, that
the commissioners named were officers within the meaning
of the constitution, not mere municipal officers, but agencies
of the state at large, although their functions were to be
performed within the town of West Chicago; second, the
effect of the constitution was to make the power of removal
by, the governor co-extensive with his power of appoint-
ment; third, the prior act for removal of the commission-
ers by the court after trial, etc., was in conflict with the
constitution and was superseded thereby; fourth, since the
constitution had invested the governor with power to
remove officers, but was silent as to the mode of its exer-
cise, he might determine for himself whether any of the
statutory causes therefor existed, and that his discretion,
when exercised, is final and binding upon the courts.   That
case, although decided subsequent to the adoption of our
constitution in 1875, is entitled to a careful consideration
in placing a construction upon it.

It may be said to be an elementary rule of construction
that whenever a legislative act can be so construed as to
avoid a conflict with the constitution and give it the force
of law it will be so construed, although such construc-
tion may not be the most obvious or natural one. (Cooley
on Const. Limitation, 184; *Pleuler v. State*, 11 Neb.,
547.)   Another recognized rule of construction is that
constitutional limitations upon the power of the legislature
in respect to offices will be confined to those offices which
are specially enumerated in the constitution, unless the
contrary clearly appears therefrom.   All others may be
abolished or the terms, functions, and emoluments thereof
changed by law.   This rule is fully sustained by the au-
thorities cited by relator.   Contemporaneous constructions
by the legislature of the constitutional provisions quoted

indicate that they were understood from the adoption of the constitution to apply only to offices named therein. For instance, the first legislature elected under the constitution, in 1877, provided for a commission to revise the laws of the state, to be appointed by the governor without the consent of the senate. In 1879 the legislature created what is known as the fish commission, the members of which were to be appointed by the governor with the consent of the senate. In 1883 the legislature authorized the governor to appoint a superintendent, etc., for the hospital for the insane without the consent of the senate. In 1885 the governor was authorized to appoint a superintendent of the census, also an inspector of bees and honey in each county, without the consent of the senate, and a live stock commission to be confirmed by the senate. These, and many other acts, might be cited, as showing the understanding of the different legislatures that the constitutional provisions in question were to have no application to offices created by law. We are unable to believe, when viewed in the light of twelve years of legislative and judicial history, under the constitution, that it was ever intended as a restriction upon the power of the legislature over officers not within the contemplation of the men who framed it or the people who adopted it. Police commissioners of Omaha are in one sense state officers, since they are charged with a duty in the interest of the public at large. But so far as their appointment, government and removal were concerned, at the time of the adoption of the constitution, they were essentially municipal agents, and not state officers. To our minds, therefore, to hold that such officers are within the constitutional prohibition is neither a necessary nor reasonable construction thereof.

There is still a more cogent objection to the decision in *Wilcox v. People*, viz., it is in conflict with the course of decisions in this state. In *State v. Seavey*, 22 Neb., 454, it was, in effect, held that the constitutional provisions in

question did not apply to these particular officers, hence it was not essential to a valid appointment that it should be with the consent of the senate. The case of *Douglas County v. Timme*, 32 Neb., 272, we regard as decisive of the question. The provision under consideration in that case was section 16, article 3, of the constitution, which, in terms, provides that the compensation of no public officer shall be increased or diminished during his term of office. It was held that the above provision applies only to offices created by the constitution. The foregoing conclusion is in harmony with *State v. Kalb*, 50 Wis., 176, cited in the opinion of the present chief justice. The reasoning of the courts in the cases named must control in this.

We come now to an examination of some of the provisions of the charter of the city bearing upon the question at issue. In addition to the provision for removal of fire and police commissioners in section 145, it is provided by section 172 as follows:

"Sec. 172. The power to remove from his office the mayor or any councilman or other officer mentioned in this act in any city of the metropolitan class, for good and sufficient cause, is hereby conferred upon the district court for the county in which such city is situated; and whenever any two of the city councilmen shall make and file with the clerk of said court the proper charges and specifications against the mayor, alleging and showing that he is guilty of malfeasance or misfeasance as such officer, or that he is incompetent or neglects any of his duties as mayor, or that for any other good and sufficient cause stated he should be removed from his office as mayor, or whenever the mayor shall make and file with the clerk of said court the proper charges and specifications against any councilman or other officer mentioned in this act, alleging and showing that he is guilty of malfeasance or misfeasance in such office, or that he is incompetent, or neglects any of his duties, or that

State, ex rel. Att'y Gen'l, v. Smith.

for any other good and sufficient cause stated he should be removed from his office, the judge of such court may issue the proper writ requiring such officer to appear before him, on a day therein named, not more than ten days after the service of such writ, together with a copy of such charges and specifications upon such officer, to show cause why he should not be removed from his office. The proceedings in such case shall take precedence of all civil causes and be conducted according to the rules of such court in such cases made and provided, and such officer may be suspended from the duties of his office during the pendency of such proceedings by order of said court."

It is urged by counsel for respondent that the above provision is exclusive and should be construed as a limitation upon the powers of the governor, and that he is authorized to remove the officer above named only upon a trial and finding by the district court. To this proposition we cannot assent. The governor is, by section 145, empowered to remove these particular officers for a specific cause. This special provision is not in conflict with the general provision for removal of officers of the city. The question, however, to which most prominence is given by counsel is that of the power of the governor to remove without giving the officer an opportunity to be heard in his defense. It is claimed by relator that the removal of an officer is a purely executive act, and therefore the governor may remove without charges, serving notice, or hearing of any kind.

Before referring to the contention of the respondent we will examine some of the authorities relied upon by the relator in addition to *Wilcox v. People, supra.*

*State v. McGarry,* 21 Wis., 496, is substantially as follows: The county board were, by a special provision applicable to M. county only, authorized to remove the inspector of the house of correction for incompetency, improper conduct, or other cause satisfactory to the board, which

28 NEBRASKA REPORTS. [Vol. 35

State, ex rel. Att'y Gen'l, v. Smith.

cause should be particularly assigned in writing and entered upon the minutes of the board, with the yeas and nays upon a vote of removal. It was held that the board might remove *ex parte* without notice or a hearing of any kind. Chief Justice Dixon in the opinion of the court says: "The only question of judicial cognizance is whether the board has kept within the jurisdiction or whether the cause assigned is a cause for removal under the statute."

In *Keenan v. Perry*, 24 Tex., 253, the plaintiff was removed by the governor, as superintendent of the asylum for the insane. The law provided for his removal for incompetency, misconduct, and refusal to discharge the duties of his office. It was held that the law invested the governor with exclusive power to remove, and that his action was final and conclusive. This case, however, appears to be inconsistent with a later case in the same court, which will be noticed hereafter.

In *Wright v. Defrees*, 8 Ind., 298, it was held that the power of the executive to remove an officer for a given cause implies power to judge of the existence of such cause, and the power being vested exclusively in the executive, cannot be controlled in the exercise of any other branch of the government.

In *State v. Doherty*, 25 La., 119, the same reasoning is used as in the last case, with the same conclusion.

In *Att'y Gen'l v. Brown*, 1 Wis., 442, it is held that where the law authorizes the removal of an officer for cause or upon notice, in the absence of express authority for an appeal or review, the courts have no authority to inquire into the grounds for removal. But in that case the governor was expressly authorized to remove the commissioner when he should believe that the best interests of the state demanded such removal.

In *People v. Stout*, 19 How. Pr. [N. Y.], 171, the term of office was not fixed by law, and the mayor was authorized to remove with the consent of the board of aldermen.

In *Territory v. Cox*, 6 Dak., 501, there is an able and exhaustive discussion of the character of the power of the executive to remove officers, concluding with the opinion that it is purely executive and in no sense judicial. The judgment of the court is, however, placed upon the statute which provides for an examination of the accounts of all public officers charged with the disbursement of public money. The examiner is required to report to the governor any failure of duty by financial officers when he (the governor) is authorized in his discretion to take such action for the public security as the exigencies of the case demand. It was held that the executive had authority in his discretion to remove the trustees of an asylum for the insane upon the report of an examination of their accounts by the public examiner.

In *Eckloff v. Dist. of Columbia*, 135 U. S., 240, the commissioners, by statute, had power to abolish any office, reduce the number of employes, remove from office, etc. The only contention in that case was that the unrestricted right above was subject to the limitation of a prior act of congress, but the court held that the prior act had been superseded by the law first above mentioned.

It is contended on the other hand that the governor has no power under the charter of the city to remove the respondent without, first, specific charges; second, notice of such charges; third, an opportunity to be heard in his own defense. Sustaining this proposition are two classes of authorities, as will be hereafter noticed. One class holding that the determination of the existence of cause for removal is a function of the judiciary, and that, as a condition to removal by the executive, the incumbent is entitled to have the question determined by the courts. The others hold that the executive is possessed of limited judicial functions, and that he has power to determine the question of cause for removal.

In *Page v. Hardin*, 8 B. Mon. [Ky.], 648, the constitu-

tion of Kentucky provided that the secretary of state should hold office during the term of the governor if he so long behave himself well. The governor, by an instrument in due form, declared that the secretary appointed was guilty of willful neglect and refusal to live at the seat of government and perform his duties as secretary, had abandoned the said office, and, in the judgment of the governor, the said office has become vacant for causes aforesaid. The successor appointed was held not entitled to the office. The court says: " The secretary being removable for breach of good behavior only, the ascertainment of the breach must precede the removal; in other words, the officer must be convicted of misbehavior in office. And we shall not argue to prove that, in a government of laws, a conviction whereby an individual may be deprived of valuable rights and interests, and may moreover be seriously affected in his good fame and standing, implies a charge and trial and judgment, with the opportunity of defense and proof."

In *Honey v. Graham*, 39 Tex., 1, the governor, during the absence from the state of the defendant, issued a proclamation declaring his office of treasurer vacant, and in an action to determine his title to the office it was held that the action of the governor was void. The court says: "The power of the governor to fill a vacancy when one exists is not disputed. The power to create a vacancy is denied by every authority, except where the office is filled by the governor's choice of an incumbent without concurrence of the senate or election by the people, and the term of office is undefined by law."

In *State v. Police Com'rs*, 36 N. J. Law, 101, the police commissioners of Jersey City had been convicted of malfeasance in office, whereupon the governor declared their offices vacant. This act was held to be void on the ground that the right to remove an officer for misbehavior calls for the exercise of judicial functions. Chief Justice Beasley, in the opinion in which he refers with approval to *Page v.*

*Hardin, supra,* says: "Indeed, among all the cases that I have examined, I find no exemplification of the exercise of such an act of authority. On the contrary, it seems to me quite clear that a removal of an officer holding for a definite term, by the sovereign *mero motu,* on the plea of misbehavior, would have been a plain usurpation. I can find nowhere any traces of such a right having been claimed."

In *Com. v. Slifer,* 25 Pa. St., 23, it is said: "We are unwilling to believe that the governor intended, without cause, to remove an officer, appointed for a term of years, before the term had expired. That he possessed the power of removal is conceded; but the power is to be exercised upon cause shown. It exists only where 'the officer fails and neglects faithfully to perform the duties of his office.' It is true that the executive is made the judge, and that his opinion or judgment is conclusive, so far as it relates to the question of removal. But that judgment is not to be pronounced without notice, without any charge or specification, and without any opportunity given to the officer to make his defense. The reputation and the right of the incumbent to the office for the term specified in his commission are involved, and he has a right to know the accusation and to be heard in his defense."

The case of *Dullam v. Willson,* 53 Mich., 392, is strikingly similar to this in all essential respects. By the constitution of that state the governor is authorized to remove from office any officer for gross neglect of duty, or for corrupt conduct in office, or for any other misfeasance or malfeasance. The notice of removal in that case is as follows:

"EXECUTIVE OFFICE, LANSING, July 2, 1883.

"*To Jas. C. Wilson*—SIR: I have this day, for your official misconduct and habitual neglect of duty, removed you from the office of trustee of the Michigan Institute for the Deaf and Dumb.    *    *    *

"Respectfully,    J. W. BEGOLE."

The court, in passing upon the power to thus remove, holds that the authority conferred upon the governor to remove officers can only be exercised upon charges which shall specify the particular act relied upon to make out the cause alleged, of which the incumbent shall have notice and a reasonable opportunity for a hearing thereon, at which he may produce proofs. Judges Champlin and Campbell filed carefully prepared opinions, in which they cite the authorities bearing upon the subject in this country and England, the former of whom concludes as follows: "I have examined carefully the authorities cited upon the brief of the learned counsel for relator in support of the position that no notice is required to be given, and that the action of the executive is final and conclusive. It is sufficient to say, without commenting specially upon them, that the reasoning of those cases does not commend itself to my judgment. They appear to me to be opposed not only to the decided weight of authority, but also to the fundamental principles of justice."

In *Hallgrene v. Campbell*, 46 N. W. Rep. [Mich.], 381, it is said: "We have not found any case where an officer who was appointed for a fixed term (and when the power of removal was not expressly declared by law to be discretionary) has been held to be removable except for cause, and wherever cause must be assigned for the removal of an officer, he is entitled to notice and a chance to defend."

In *Ham v. Board*, 142 Mass., 90, the board of police were authorized to remove for cause. It was held that they had no power to remove until after notice and an opportunity by the official in question to be heard in his own defense.

In *State v. St. Louis*, 90 Mo., 19, the statute authorized the removal of any elected officer of the city of St. Louis for cause. The court says: "When the removal is not discretionary, but must be for cause, as is the case here, and nothing is said as to the procedure, a specification of

the charges, notice, and an opportunity to be heard, are essential. This, we think, is the result of the authorities before cited. The proceedings in this case are wanting in all these requisites; for, if indeed any charges were ever made against the relator at all, they were the product of the minds of the members of this committee and by them kept from the knowledge of the accused."

In Dillon on Mun. Corp. [4th Ed.], sec. 250, the author says that where the right of removal is confined to specific causes, such power cannot be exercised until there have been formulated charges against the officer, notice thereof, and an opportunity for defense. The following cases also support the principle of the foregoing: *Biggs v. McBride*, 17 Ore., 640; *State v. Hawkins*, 44 O. St., 98; *Hogan v. Carberry*, 4 Cin. Law Bul., 113.

It seems plain to us that the doctrine of these cases is in accord with the weight of authority and is supported by the soundest reasons. The tendency of current opinion is strongly in the direction of fixed and definite terms of office, and in favor of making the officeholder, so far as practicable without impairing the public service, independent of the appointing power. It is in obedience to a settled public conviction upon the subject that congress annually appropriates large sums of money to accomplish reforms in the civil service of the general government. It is this sentiment that is expressed in the provision in the charter of the city of Omaha under consideration. The purpose of the legislature in adopting the provision in question was twofold: First, as has been said, to provide an efficient police department for a great city by removing it from the influence of local politics; second, to provide against the effects of fluctuation in state politics, by fixed terms for the police commissioners, to be removed for specific causes only. Without further elaboration our conclusion is that the charter of the city of Omaha does not authorize the removal of the fire and police commis-

6

sioners thereof except for official misconduct, nor until they have been notified of the particular act or acts of misconduct with which they are charged, and an opportunity afforded them to be heard in their own defense. The questions whether the power of removal is judicial in the sense that the officers aforesaid are entitled to have the question of cause for removal submitted to the courts for determination, and if not, whether the courts have jurisdiction to review the action of the governor, are not raised by the record and are not determined. Since the answer states a complete defense, it follows that the demurrer thereto should be

OVERRULED.

THE other judges concur.