STATE ex rel. WILLIAM H. ROSCKES v. J. W. DREGER and Another.[1]

January 26, 1906.

Nos. 14,683—(234).

**Jurisdiction of Municipal Court.**

> The municipal court of the city of Minneapolis has jurisdiction to try and determine all offenses committed within the county of Hennepin which under the general laws of the state are within the jurisdiction of a justice court.

**Act Valid.**

> The provisions of chapter 252, p. 398, Laws 1901, which authorize the trial of a person charged with keeping a "blind pig," before any magistrate in the county where the offense is committed, are valid.

Appeal by relator from an order of the district court for Hennepin county, Simpson, J., discharging a writ of habeas corpus issued from

[1] Reported in 106 N. W. 904.

that court, and remanding the relator to the custody of respondent Dreger as sheriff.    Affirmed.

*Ayers & McDonald* and *J. T. Hutchinson,* for appellant.

*Al. J. Smith,* County Attorney, and *Elmer W. Gray,* Assistant County Attorney, for respondents.

ELLIOTT, J.

The relator was convicted of running a "blind pig" in the village of Excelsior, in the county of Hennepin, Minnesota, in violation of chapter 252, p. 398, Laws 1901.   Upon complaint duly made he was arrested and taken before a judge of the municipal court of the city of Minneapolis, and upon conviction in due form was sentenced to imprisonment in the county jail for the term of thirty days.   The proceedings were in all respects regular and in accordance with the provisions of the statute above cited and the laws under which the municipal court was organized and is now exercising its powers.   After the defendant was imprisoned under the sentence, he caused a writ of habeas corpus to issue out of the district court.   After a hearing thereon in the district court the writ was discharged, and the defendant was remanded to the custody of the sheriff, and thereupon appealed to this court.

The question for consideration arises upon the constitutionality of the statutes which authorize the municipal court of the city of Minneapolis to hear and determine criminal cases which arise in Hennepin county, but beyond the corporate limits of the city of Minneapolis. The municipal court in question was created by an act of the legislature enacted in 1874, under the authority of section 1 of article 6 of the constitution of the state.   Thereafter various amendments were made to this statute, which were finally consolidated and re-enacted as chapter 34, p. 598, of the special laws of 1889.   Minneapolis Charter, Ordinances, etc. (Ed. 1905) p. 129.   This statute provides that the municipal court shall be a court of record and shall have exclusive jurisdiction to hear all complaints and to conduct all examinations and trials in criminal cases arising or triable within the city of Minneapolis theretofore cognizable before a justice of the peace.   Where not otherwise provided in the act, the court is vested with all the powers of the district courts of the state, and all laws of a general nature apply

to it, so far as they can be made applicable and are not inconsistent with the provisions of the act, and

> The jurisdiction of said court shall be coextensive with the limits of said Hennepin county.

It is further provided that the judge of the municipal court shall have the general powers of a judge of a court of record, and as a conservator of the peace shall have all power and authority which

> Is or may hereafter be vested in justices of the peace or any other judicial officer.

The duties of the judge and the manner in which he shall proceed are set forth in section 7 (page 601) as follows:

> The municipal court shall be held in the city of Minneapolis, at some suitable place to be provided therefor by the city council. Its judge shall be the chief magistrate of the city and shall see that the criminal laws of the state, and the ordinances, laws, regulations and bylaws of said city, are observed and executed, and for that purpose shall open his court every morning (Sundays and legal holidays excepted), and proceed to hear and dispose of in a summary manner, all cases which shall be brought before him by the police officers of the city or otherwise either with or without process for violations of the criminal laws of this state committed within the county of Hennepin, or of the ordinances, regulations, or bylaws of said city.

The municipal court is thus given express statutory authority to hear and determine the charge against this relator. The court was created by the legislature under the authority of section 1 of article 6 of the constitution of the state, which provides that:

> The judicial power of the state shall be vested in a supreme court, district courts, courts of probate, justices of the peace and such other courts, inferior to the supreme court, as the legislature may from time to time establish by a two-thirds vote.

The constitution imposes no limitations upon the character or jurisdiction of the courts which the legislature may thus create, other than

that they shall be inferior to the supreme court. It provides by its own terms for the election of supreme, district, and probate judges and justices of the peace, and in order that the elective system shall prevail and apply to the entire judiciary of the state it is provided by section 9 of article 6 that all the judges of the courts which may in the future be created by the legislature "shall be elected by the electors of the judicial district, county or city for which they shall be created." There is no question but that the intention is that all the judges who are elected for certain territorial divisions of the state shall be elected by the electors of the particular district, but it does not follow that the jurisdiction of the court is limited to causes arising within the same territory. Jurisdiction is not in its nature territorial. It is simply the power and authority to hear and determine controversies between juristic persons. It is one of the primary functions of the state, and is exercised through that department of the state government to which it is assigned by the constitution. The distribution of this power among the various courts is made by the constitution and legislature under constitutional authority. So far as civil actions are concerned there is nothing in the constitution to prevent the legislature from authorizing the judge of one judicial district to hear and determine controversies which arise anywhere within the state, provided jurisdiction can be obtained over the defendant by service within the state. The statutory provisions with reference to the place of trial of actions exist for the convenience of parties and the cheaper and more efficient administration of justice. With this object in view the county is made the judicial administrative unit, with provisions for a change in the place of trial when demanded by the requirements of the same general policy.

For reasons which lie far back in our history, the Bill of Rights secures to a person who is charged by the state with the commission of a crime the right to be tried in the vicinage in which the crime is alleged to have been committed and where he can readily secure his evidence and presumably have the benefit of his good reputation. This guaranty recognizes the county or district as the territorial unit. It does not recognize subdivisions thereof. If a person who is charged with a crime is given the full benefit of this constitutional privilege, he has no right to complain of the fact that he did not have the privilege of vot-

ing for or against the judge of the court in which he is tried. He is called to account by the state, and not by the county or district in which the court is held. The administration of justice is not a municipal or local function. It is true the state may, and often does, act through the agency of a municipality. But the courts, supreme, district, probate, justice of the peace, and municipal, are the state's courts. The judges of the municipal court of the city of Minneapolis are state, and not municipal, officers. State v. Sullivan, 67 Minn. 379, 383, 69 N. W. 1094. The relator was not tried by the city of Minneapolis, but by the state of Minnesota in one of its courts, and he enjoyed the full constitutional privilege of a trial in the county in which the offense is alleged to have been committed.

We do not construe section 9 of the constitution as restricting the power of the legislature in the matter of determining the jurisdiction of the courts it is authorized to create. The evident purpose of the section is to forbid the legislature to provide for appointive judges in these courts. It confers no new constitutional privileges on the defendant. Nor is there any justification for classifying the courts of the state as constitutional and statutory, except for the purpose of noting that the courts which are named in the constitution cannot be abolished, or the nature of their jurisdiction affected, by legislative action. After a court is created by the legislature in the constitutional manner, it is a constitutional court, and in the exercise of its powers and jurisdiction is governed by the same general principles as the other courts of the state.

The laws of this state have always authorized certain courts to exercise jurisdiction over causes arising without the territorial limits of the judicial election district. The district judges elected in one district are authorized under certain conditions to hold court in other districts, and justices of the peace, although elected in a township or precinct, have always had jurisdiction coextensive with the limits of the county. The constitution authorizes the legislature to provide for a sufficient number of justices of the peace in each county. Chapter 69, article 4, of the revised statutes of 1851, provided for the election of justices in each township, with jurisdiction coextensive with the limits of the county. Practically the same provisions appear in the statutes

97 M.—15

of 1849–1858 (chapter 8, art. 3, § 2; chapter 59, § 1) and in all subsequent revisions. See G. S. 1866, c. 65, §§ 1, 2, 130; G. S. 1878, c. 10, §§ 14, 26, and chapter 65, §§ 139, 140 (G. S. 1894, §§ 928, 940, 5093, 5094). G. S. 1878, c. 10, § 153 (G. S. 1894, § 1074), conferred upon city justices "all the authority, power and rights of a justice of the peace of the county under the laws of this state," and in addition thereto exclusive jurisdiction to hear and determine all complaints for violation of city ordinances. Prior to the time when the municipal court of the city of Minneapolis was created, a city justice or ordinary justices of the peace had been elected in different districts within the city, as in other parts of Hennepin county. The jurisdiction of these justices under the general laws of the state extended throughout the county. When the municipal court was established, criminal jurisdiction was taken from the justices of the peace and transferred to it. For some years thereafter the justices of the peace continued to be elected and to exercise civil jurisdiction, but ultimately the justice courts were abolished and all matters which had been cognizable before them were transferred to the municipal court.

Although a court of record with a statutory code of procedure, the municipal court is authorized to exercise only the criminal jurisdiction of a justice court, as that is defined by the general statutes of the state. The jurisdiction which these officials had to hear and determine matters arising within the limits of the county was conferred upon the municipal court by the express language of the statute which created the court; but it would have taken it, without this, under the general statutory provisions relating to justice courts. Offenses triable before a justice court committed in the town of Excelsior had from the time when the state was created been triable before a justice of the peace elected by the electors of a territorial subdivision of the city of Minneapolis: This jurisdiction passed to the municipal court, and any decision which would deny it this power would overthrow the entire system of justice courts. We do not think that the construction of article 6, § 9, in the constitution which is contended for by the relator can be sustained. It is extremely technical and unnatural, and out of harmony with general theory and practice.

For similar reasons we hold that the provisions of chapter 252, p.

398, of the laws of 1901, which authorize the trial of a person who is charged with the offense of "keeping a blind pig" before any magistrate in the county where the offense is committed, is valid.

The order appealed from is affirmed, and it is ordered that the relator be remanded to the custody of the respondent.