STATE ex rel. EDWARD T. YOUNG v. JOHN E. C. ROBINSON.[1]

June 7, 1907.

Nos. 15,225—(22).

**Attorney General.**

The attorney general, as the chief law officer of the state, possesses and may exercise, in addition to the authority expressly conferred upon him by statute, all common-law powers incident to and inherent in the office.

**Officers of Municipal Corporations.**

Officers of municipal corporations organized under legislative authority are, in respect to all general laws having force and operating within their municipality, agents of the state, and may be charged with the performance of such duties in the enforcement of the same as the legislature may from time to time impose.

**Sale of Intoxicating Liquor.**

The general statutes of the state regulating the sale of intoxicating liquors operate and have force uniformly throughout the state, anything contained in municipal charters or ordinances to the contrary notwithstanding.

**Forfeiture of Office—Duty of Attorney General.**

The forfeiture of office and pecuniary penalty prescribed by R. L. 1905, §§ 1561, 1562, for the failure of the mayor or other officer named therein to make complaint of known violations of the statutes regulating the sale of intoxicating liquor, may be enforced by the attorney general through appropriate proceedings brought for that purpose.

**Same.**

The power conferred by the charter of St. Cloud upon the city council thereof, upon the subject of the removal of municipal officers for misconduct in office, does not exclude the power of the state, through the attor-

[1] Reported in 112 N. W. 269.

ney general, to effect a removal for a violation of the statute above referred to. The power and authority of each is concurrent.

**Same.**

> Nor is the authority of the attorney general taken away or superseded by the provisions of section 1561, by which the county attorney of each county is required to prosecute violations of the statute.

Appeal by defendant from an order of the district court for Stearns county, Baxter, J., overruling a demurrer to the complaint. Affirmed.

*Theo. Bruener,* for appellant.

This action will not lie for the reason that there is another adequate and exclusive remedy at law provided for the alleged malfeasance in office by the charter of the city of St. Cloud. The charter is contained in Sp. Laws 1889, c. 6. Provisions here applicable are: section 11, subc. 2 (p. 136) ; section 7, subc. 14 (p. 194) ; section 15, subc. 14 (p. 195). R. L. 1905, § 747. Appellant claims that the remedy provided by the city charter is an exclusive remedy for removing officers for cause. (1) Section 7, subc. 14, provides that no state law concerning the provisions of the charter of St. Cloud shall be considered as repealing, amending or modifying the same, unless such purpose be expressly set forth in such law. (2) It is the general doctrine that general laws operate to repeal only such charter provisions as are inconsistent with the general laws. State v. Lindquist, 77 Minn. 540. (3) R. L. 1905, § 747, reaffirms all the provisions of the act creating the city of St. Cloud. (4) The power of a municipal body to remove from office is not discretionary, but only for cause, after notice and hearing. The proceedings are judicial in their nature and may be reviewed on certiorari. A special law governs the city of St. Cloud in this matter. (5) It is of prime importance that each department of government avoid anything like improper interference with another in the discharge of its functions. State v. Common Council, 53 Minn. 238. "Where the causes of removal from office are prescribed by statute, which also provides a special mode of procedure for such removal, the statutory remedy is the exclusive one." State v. McLain, 58 Oh. St. 313.

This action was not commenced under R. L. 1905, § 4545, but is an action for the enforcement of R. L. 1905, §§ 1561, 1562.

The complaint alleges that, by reason of the malfeasance of the de-

fendant, he has forfeited his right to hold said office as mayor, and has subjected himself to the penalty of R. L. 1905, § 1562. The relief asked for is the removal from office and the recovery of a forfeiture of $500. We contend therefore that this action is not brought under section 4545, but under sections 1561 and 1562, and for the enforcement of section 1562. There is no provision in the statute authorizing the attorney general to bring an action under section 1562. Section 1561 expressly provides: "Every county attorney shall prosecute all cases under this chapter arising in his county." Conceding that section 4545 provides a concurrent remedy, the attorney general has not brought that kind of an action, but an action under section 1562, for which he has no legal authority. In this connection see also R. L. 1905, § 4540.

*Edward T. Young,* Attorney General, and *Geo. W. Peterson,* for the State.

In State v. Langdon, 29 Minn. 393, the court said: The intention to abrogate the general law as respects a particular locality should be very apparent, to justify a construction of a special act leading to that result. See also State v. Langdon, 31 Minn. 316; State v. Nolan, 37 Minn. 16; Territory v. Webster, 5 Dak. 351; Black, Intox. Liq. §§ 225, 226; State v. Swanson, 85 Minn. 112; Tacoma v. City, 14 Wash. 288. No exclusive jurisdiction was given to the city of St. Cloud on this subject by its charter. By section 4 of chapter 4 of the charter all ordinances are required to be "not repugnant to the laws of the United States or of this state." Section 1, c. 3, provides that the mayor "shall take care that the laws of the state and the ordinances of the city are duly enforced and observed within the city." But if the power granted to regulate the liquor traffic had been exclusive, such grant would be subject to change and would be nullified by the enactment of the revised laws. A municipal charter is not a contract between the state and the city. In their governmental character municipal corporations are the agents of the state and local depositaries of certain limited and prescribed political powers. As to their private character, their rights and liabilities are governed by the same rules which control private corporations. Governmental powers delegated to them may be altered or repealed. State v. Swanson, supra. Section 1561, making it the

duty of every mayor to make complaints and cause arrests, concludes with these words, "anything in the ordinances or by-laws of such municipality to the contrary notwithstanding." But in this case no amendment of the charter is required to make the general laws operative in the city, because they were never abrogated there. The power granted in the charter expressly requires all ordinances to be consistent with the general laws of the state. Any ordinance of the city of St. Cloud which conflicts with the state law is void. Section 1562 declares the failure of the mayor to comply with R. L. 1905, c. 16, to be malfeasance in office, for which he may be removed, and disqualifies him for holding the office for the balance of the term for which he was elected.

What tribunal has jurisdiction of proceedings for his removal? Const. art. 13, § 2, authorizes the legislature to provide by law for the removal of inferior officers for malfeasance or nonfeasance in the performance of their official duties. It is the rule that if a statute defining an act as malfeasance prescribes the method of removal, that method is exclusive, and must be followed. State v. McLain, 58 Oh. St. 313, 322. That case does not justify the defendant's challenge of the jurisdiction of the court in this proceeding, in view of the fact that section 1562 provides no remedy for enforcing the forfeiture there declared. There is no way under our law of enforcing the forfeiture, except by quo warranto or by the civil action authorized by R. L. 1905, § 4545, by which the attorney general is expressly charged with the duty of bringing an action in the name of the state against the person offending, "when any public officer does or suffers an act, which by law causes a forfeiture of his office." Defendant's neglect to perform the duties prescribed by section 1561 constituted malfeasance under section 1562, and had worked a forfeiture of his office. At common law every corporation, municipal or otherwise, had the right, as an incident to its existence, to exercise the power of amotion for just and reasonable cause, arising under its charter. Kent, Com. 278, 279; Richards v. Clarksburg, 30 W. Va. 491; Willard's Appeal, 4 R. I. 597; Armatage v. Fisher, 74 Hun, 167. But the provision of our constitution vesting in the legislature the power to provide for the removal of all inferior officers guilty of malfeasance has abrogated the common-law rule as to officers guilty of such offenses as come within those terms. State v. McLain, supra. The state never intended to surrender to municipal

corporations its power to get rid of an officer who fails to perform a duty imposed by the general laws, even though he holds the office under the charter of a city; and no rule of the common law or statute ever invested municipalities with the power to punish or remove public officers for malfeasance or nonfeasance arising under general laws. The cause for which a municipal officer may be removed might be such a violation of his duty to the municipality as would in law amount to malfeasance, misfeasance or nonfeasance, but his removal would also be justified if the offense were below that grade, if in the honest judgment of the common council his continuance in the office would be in fact detrimental to the order and good government of the city. State v. Common Council, 53 Minn. 238, 244. The power of a motion possessed by the city of St. Cloud is distinct and local in its character and application, and in no way conflicts with the power of the state to remove from office the defendant mayor for malfeasance arising under the general laws of the state.

Defendant claims that the action is based on section 1562 alone. As to removal from office, section 1562 does not provide for its own enforcement. The action authorized by section 4545, and a proceeding in quo warranto, are the only forms of procedure for the purpose of which we know. If counsel desired to raise the question of the right to include the claim for a penalty under section 1562 with the action for removal, he should have included in his demurrer the objection that two causes of action were improperly united. The point, if there is anything in it, not having been raised by demurrer is waived. Counsel also says that the attorney general has no authority to enforce section 1562. Counsel evidently overlooked the fact that the common-law authority of the attorney general has not been taken away and that from time immemorial the attorney general has had authority to bring any action on behalf of the state necessary to enforce its laws.

BROWN, J.

This action was brought by the attorney general, under the authority conferred by section 4545, R. L. 1905, for the removal of respondent from the office of mayor of the city of St. Cloud for his alleged malfeasance in office and to recover the penalty provided by section 1562.

Defendant interposed a general demurrer to the complaint, and appealed from an order overruling it.

Section 1561, R. L. 1905, makes it the duty of the mayor of every municipality in this state, and other public officers named therein, to make complaint to the proper magistrate of any known violation of the laws of the state on the subject of the sale of intoxicating liquors; and section 1562 declares a neglect of that duty malfeasance in office, subjecting the guilty officer to removal and a penalty of not less than $100 and not more than $500.

The complaint before us charges a violation of this statute. It alleges that the defendant is, and at the time stated therein was, the mayor of the city of St. Cloud, an incorporated municipality of this state; that long prior to the date mentioned the city council thereof had duly licensed numerous persons to deal in intoxicating liquors within the city; that for a period of four months immediately preceding the commencement of the action the several holders of such licenses had openly, flagrantly, and continuously kept their saloons or places of business open for trade on Sunday, and often after the hour of eleven o'clock at night on other days, contrary to the provisions of the general statutes on the subject; that their business was so conducted and carried on with the full knowledge, approval, and consent of defendant, as mayor; and that he failed and refused to compel an observance of the law, by making complaint of known violations thereof or otherwise. Judgment is demanded that he be removed from his office, and that the state have and recover the penalty fixed by law for his neglect of duty.

It is contended by defendant (1) that the action cannot be maintained, for the reason that there is another exclusive remedy at law provided by the charter of the city of St. Cloud; and (2) that the attorney general cannot maintain an action to recover the penalty prescribed by section 1562, R. L. 1905, for the reason that the duty of enforcing the same is imposed by section 1561 upon the county attorney. The charter of the city of St. Cloud, on the subject of removal of municipal officers, provides as follows [2]:

> Any person holding office under this charter may be removed from such office by the vote of two-thirds of all the aldermen

[2] Sp. Laws 1889, p. 136, c. 6, subc. 2, § 11 (Reporter).

authorized to be elected. But no officer elected by the people shall be removed except for cause, nor unless first furnished with a written statement of the charges against him, nor unless he shall have a reasonable opportunity to be heard in his defense. * * *

It further provides a course of procedure when charges are preferred seeking the removal of an officer, and empowers the council to compel the attendance of witnesses and the production of books and papers, and to hear and determine the matter on its merits. Section 7 (subc. 14) provides that no general law shall be construed as repealing or modifying any of its provisions, unless that purpose be expressly set forth in such law. R. L. 1905, § 747, continues in force all existing laws relative to municipal corporations. In view of these enactments applicable to the city of St. Cloud, it is urged by defendant that the remedy for the removal of delinquent city officers provided by the charter is exclusive, and that the state, through the attorney general, has no power to interfere.

We do not concur in this contention. A municipal corporation, on coming into existence, assumes a double character. As respects its business or proprietary functions, its local affairs, it is an independent corporation in no way subject to the control or supervision of the state, and may manage its internal affairs free from legislative interference. State v. Moores, 55 Neb. 480, 76 N. W. 175, 41 L. R. A. 624. It may, within the limitations of its charter, contract and be contracted with, and is solely responsible for its obligations. It may install various public utilities, and provide generally for the comfort and convenience of its inhabitants. For default in any of its obligations in this respect the state does not concern itself; but in so far as the general laws of the state operate and have force and effect within the municipality, and the officers thereof are charged with their enforcement, the municipality and its officers are the agents, and subject to the command and control, of the state government at all times. The legislature may impose upon the local officers specific duties in the matter of the enforcement of the laws of the state and prescribe penalties for a failure to perform the same. Indeed, the efficient administration of the law, adopted for the welfare of the state at large, renders it imperative that the state, as

guardian for the people as a whole, should possess and exercise this unqualified control. Its absence would lead to a failure of law enforcement, so essential to the good order of society and the protection of property and property rights. That the state, when creating a municipal subdivision for local self-government, retains this general supervisory control over the affairs thereof, except so far as expressly or by fair implication surrendered, there can be no serious question.

The city of St. Cloud is no exception to the rule, nor was it granted by its charter any exclusive authority respecting the removal of its officers for causes other than a violation of municipal duties. Authorities sustain the suggestion of the attorney general to the effect that the power of removal conferred upon the city vested in the council thereof such powers only as exist at common law, viz., power of determination and removal for causes involving a violation of duties to the municipality. 2 Kent, Com. 297; Richards v. Clarksburg, 30 W. Va. 491, 4 S. E. 774; Rex v. Richardson, 1 Burr. 517. In the last case cited it was laid down by Lord Mansfield that the power of removal vested in municipal corporations at common law, for causes other than misconduct toward the corporation, was dependent upon prior conviction of the offense charged by a court of competent jurisdiction; that while the corporation, through its governing body, has authority to hear and determine charges of official misconduct, it cannot hear and determine charges of other violations of law and make its determination thereof the basis of an order of removal. That decision was rendered nearly one hundred years ago, and has since been followed both in England and in this country, particularly as applied to private corporations.

But we are not disposed to place our decision in this case upon that ground. Whether, in the many evolutionary changes of the law respecting local municipal government, the rule stated has come down unimpaired, is unnecessary to determine at this time. It may be conceded in the case at bar that, in view of the relation existing between municipal corporations, their officers, and the state respecting the enforcement of the general laws, the power of amotion expressly conferred upon the city of St. Cloud authorizes a removal from office of any of its officers for any cause which would justify a like act by the state. But it does not necessarily follow that the power so conferred is ex-

clusive. There was no purpose on the part of the legislature in so granting the power to surrender or divest the state of its superior authority in the premises, or to deprive it of the right to call to account, in its own way, those of its agents who fail in the performance of their official duties with respect to the general law. Indeed, it is questionable, on principle, whether the legislature could, within constitutional limitations, surrender the authority of the state in this respect. It is charged with the duty of enforcing all laws designed for the public welfare, and its obligation to the people can neither be surrendered nor contracted away. 20 Am. & Eng. Enc. (2d Ed.) 1219; Philadelphia v. Fox, 64 Pa. St. 169. Essential to the complete performance of this duty is the unrestricted control and authority over all officers who are charged with the enforcement of the laws. This control necessarily includes power of removal for official misconduct, a surrender of which by the legislature would disable the state in a large measure from performing fully its obligations to the people. Its command to the local officers to proceed with the enforcement of the law might or might not be complied with, depending upon the nature of the law sought to be enforced and the temper and disposition toward it of the local removing power. This would result in the enforcement or the nonenforcement of wholesale regulations for the public weal, as suited the notions of those in local power. The fundamental principles of law will not justify a decision which would result in an indifferent administration of our laws naturally to follow from such a doctrine.

The section of the revised laws already referred to makes it the duty of the mayors of all municipalities of the state to enforce the liquor statutes, and declares a failure to perform that duty malfeasance in office, subjecting the delinquent to removal from office. Section 4545 expressly empowers the attorney general to enforce forfeitures of office, without restriction or limitation as to particular officers. No reason occurs to us why this authority may not be exercised concurrently with the power conferred upon the city council, conceding that its power extends to causes of removal other than those disclosing delinquency in the performance of duties to the city. The charter does not purport to confer the exclusive power upon the council, and we are not justified in presuming that the legislature so intended. There is nothing in the charter so indicating, and by the general rule applicable to the sub-

ject all general laws and regulations remain unimpaired by municipal charters, except to the extent expressly declared to the contrary.

This rule is illustrated by the case of State v. Lee, 29 Minn. 445, 13 N. W. 913, where the court held that a prosecution under an ordinance of the city of St. Paul for keeping a house of ill fame was not a bar to a prosecution for the same act under the general statutes. In discussing the subject the court said: "The constitution assumes and recognizes the existence and necessity of municipal corporations as bodies politic, having such powers of local self-government under grants from the legislature as are ordinarily conferred upon them, and such as they have usually possessed and exercised in the past, both in England and this country. City of St. Paul v. Colter, 12 Minn. 16 (41), 90 Am. Dec. 278; People v. Hurlbut, 24 Mich. 44, 96, 9 Am. 103; Greenwood v. State, 6 Baxt. 567, 32 Am. 539. Though its authority is derivative and local, the municipal corporation may be considered a separate government under its charter, which, subject to the general laws, stands for its constitution. The operation of the general laws remaining unimpaired, the local laws of the municipality are extra, and relate to matters which are properly of municipal cognizance. The local government simply enforces its own laws, for a purpose separate and distinct from that of the general laws, having special reference to the suppression and restraint of the elements of disorder and immorality. State v. Charles, 16 Minn. 426 (474). In view of the history, nature, and purposes of such corporations, it seems to be clear that the legislature has the power to grant such chartered privileges to them as bodies politic, without surrendering any of the jurisdiction of the state over offenses against it. State v. Oleson, 26 Minn. 507, 5 N. W. 959. It is essential to good government and the public welfare that the authority of the state and municipality should thus stand together." See also State v. Harris, 50 Minn. 128, 52 N. W. 387, 531. It is appropriate that the power of amotion be granted to all municipalities to aid in the government and control of their local affairs; but the orderly administration of such affairs does not require that the power should be exclusive of the general supervisory control of the state. Both powers may stand together without conflict. We so dispose of the question. State v. Smith, 35 Neb. 13, 52 N. W. 700, 16 L. R. A. 791.

It is further contended that the attorney general cannot maintain an action to recover the penalty imposed by section 1562, for the reason that the duty of enforcing all penalties resulting from a failure to observe the liquor statutes is cast upon the county attorney. In this we do not concur. The authority of the attorney general to maintain the action for a forfeiture under section 4545 is not questioned. The contention is that the county attorney alone may enforce the penalty provided for by section 1562. This question might be disposed of adversely to defendant on the ground that a misjoinder of causes of action is not raised by the demurrer. But we pass that point and dispose of the question upon its merits.

That the unrestrained traffic in intoxicating liquors is detrimental to the good order and welfare of the state and its citizens is conceded and declared by all courts where the subject has been under consideration, and statutes designed to restrain and regulate it are uniformly upheld. Such statutes find support in the police power, and the general subject is under the complete control of the legislature. Black, Intox. Liq. 24; City v. Whipple, 24 Minn. 61.

For many years prior to 1887 the laws of this state upon the subject were in a condition of much confusion. The legislature had practically surrendered control of the traffic to the municipalities of the state, which had in turn enacted ordinances regulating the same in harmony with the varying notions of the numerous local municipal councils and governing boards. This resulted in a total lack of uniformity in administrative regulations, and induced extremely lax enforcement of such restrictions as were imposed, creating discontent in the public mind and a strong demand for exclusive control by the state. In 1887 the legislature laid hold of the subject and asserted its authority in the premises by enacting the so-called "high license law." Chapters 5, 6, pp. 40, 41, Laws of 1887. These statutes were expressly made applicable to all cities, villages, and other municipal subdivisions to which the legislature had previously delegated the power of regulation, and all exclusive authority theretofore granted and delegated was thereby in effect repealed. Chapter 6 imposed many specific duties and obligations upon public officers in reference to the subject, including that which defendant is charged with neglecting, and prescribed severe penalties for a violation of any of its provisions. The prior statutes were

enlarged and made more specific by chapter 90, p. 211, Laws 1895, and the legislature therein again declared that the provisions thereof should apply to all municipal corporations of the state, anything in the charters or ordinances thereof to the contrary notwithstanding. Other similar acts have since been placed upon the statute books, all of which lead to but one conclusion, viz., that the legislature intended thereby for the future to restore to the state its superior authority respecting the regulation and control of the liquor traffic. State v. Swanson, 85 Minn. 112, 88 N. W. 416. This necessarily included a restoration of the authority of the executive officers of the state, who are charged with the duty of enforcing the law, which the prior statutes had in effect taken away. It restored the authority of the attorney general in the premises, and he may maintain this action, unless it be held that the legislature intended by the provision of section 1561, imposing the duty of prosecuting violations of the statute upon the county attorney, to commit to that officer exclusive authority in respect to proceedings to enforce that particular statute.

In view of this attitude of the legislature, and its evident purpose of re-establishing the supreme authority of the state in reference to this subject, the contention that the attorney general has no authority to prosecute the action does not require extended discussion. The office of attorney general has existed from an early period, both in England and in this country, and is vested by the common law with a great variety of duties in the administration of the government. The duties are so numerous and varied that it has not been the policy of the legislatures of the states of this country to attempt specifically to enumerate them. Where the question has come up for consideration, it is generally held that the office is clothed, in addition to the duties expressly defined by statute, with all the power pertaining thereto at the common law. State v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L. R. A. (N. S.) 826; 4 Cyc. 1028; Hunt v. Chicago, 20 Ill. App. 282; Parker v. May, 5 Cush. 336; People v. Miner, 2 Lans. 396; People v. Tweed, 13 Abb. Pr. 25. From this it follows that, as the chief law officer of the state, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may from time to time require. He may institute, conduct, and maintain all such suits and proceedings as he deems necessary for the en-

forcement of the laws of the state, the preservation of order, and the protection of public rights. We have no statutory restrictions in this state.

The statute under consideration, imposing specific duties upon county attorneys in the matter of its enforcement, is in no proper view a limitation upon, nor does it exclude, the general authority of the attorney general upon the same subject. We have numerous instances where particular duties are expressly imposed upon the county attorney, yet it is clear that the attorney general has the right, in virtue of his office, to co-operate with or act independently of that official in all cases where the public interests justify it. The purpose of this statute was not to confer special exclusive authority upon the county attorney, but rather specifically to require of him the performance of an existing official duty. The authority to conduct proceedings there required to be brought is incidental to his office, and the statute was in effect but a command of the state to perform his duty. If the command thus made were to be held a vesting of exclusive authority, then with equal propriety it could be held that the duty imposed by the same statute upon mayors and other municipal officers to make complaint of known violations of the statutes would necessarily preclude complaints by others. The reason for so holding would apply with the same force to both cases. But that is not the law; and it is manifest that the legislature did not intend by the statute under consideration to vest the exclusive power in the county attorney for enforcing its various provisions. The authority conferred upon that officer and the general power of the chief law officer of the state may stand together without conflict; and we so hold.

The question is not affected by section 4540, which provides that actions for fines and forfeitures may be prosecuted by certain designated persons. That statute is permissive, and does not exclude the attorney general.

Our conclusion, therefore, is that the attorney general is authorized by law to maintain the action to enforce the pecuniary penalty in question, notwithstanding the fact that the county attorney might also maintain proceedings to recover it. The commencement of the action by him is in complete harmony with the attitude of the legislature in restoring

101 M.—19

the exclusive authority of the state in the matter of regulating the liquor traffic, effected by the high license and other statutes on the subject, and the demurrer to the complaint was properly overruled.

Order affirmed.