## STATE EX REL. CLIFFORD L. HILTON, ATTORNEY GENERAL v. VICTOR E. ESSLING.[1]

October 26, 1923.

No. 23,794.

**Statute does not give Governor power to remove officer who handles money of city.**

Section 5724, G. S. 1913, empowers the Governor to remove from office "any collector, receiver or custodian of public moneys" for malfeasance or nonfeasance in the performance of his official duties. The language quoted embraces officers who collect, receive or have the custody of money belonging to the state or to a county, but not those who have custody only of money belonging to a city.

[1] Reported in 195 N. W. 539.

Upon the relation of Clifford L: Hilton, attorney general, the supreme court granted its writ of quo warranto directed to Victor E. Essling, requiring him to appear and show by what warrant he held and exercised the office of mayor of Eveleth. Writ·quashed.

*Clifford L. Hilton,* Attorney General, and *Giblin & Manthey,* for relator.

*J. C. McGilvery, George H. Spear* and *Boyle & Montague,* for respondent.

LEES, C.

Upon the relation of the attorney general this court issued its writ, directed to the respondent Essling, requiring him to appear and show by what warrant he held and exercised the office of mayor of the city of Eveleth. The information alleged that the Governor had suspended the respondent from office during the pendency of proceedings for his removal upon charges of malfeasance and non-feasance in the performance of his official duties. At the hearing the respondent appeared and moved that the writ be quashed. One of the grounds of the motion was that the Governor had no jurisdiction of the subject matter of the information or of the person or office of the respondent.

Section 1, article 13, of the state Constitution provides for the impeachment and removal of the state officers mentioned therein, and section 2 of the same article grants power to the legislature to provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their official duties. By virtue of section 2 of the Schedule all laws in force in the territory of Minnesota not repugnant to the Constitution remained in force until they expired by their own limitation or were altered or repealed by the legislature. Accordingly sections 4 and 5, chapter 10 of the Territorial Laws, incorporated in the Revised Statutes of 1851, remained in force when Minnesota became a state. These sections read as follows:

"Sec. 4. The governor may remove from office, any sheriff, coroner, register of deeds, or district attorney, whenever it shall appear to him, by competent proof, that either of such officers have been

guilty of official misconduct or neglect, or have wilfully violated the duties of their offices, giving to such officer a copy of the charges against him, and an opportunity to be heard in his defense.

"Sec. 5. Any collector or receiver of public moneys, appointed by the legislature, or by the governor, by and with the advice and consent of the council, or of both branches of the legislature, except those officers for whose removal provision is otherwise made by law, may be removed by the governor, in case it shall appear to him, on sufficient proofs, that such collector, or receiver, has, in any particular, wilfully violated his duty."

In the revision of 1866, these sections were amended and combined and appear as section 3, chapter 9, reading as follows:

"The governor may remove from office any clerk of the supreme or district court, judge of probate, court commissioner, sheriff, coroner, register of deeds, county attorney, or county commissioner, any collector or receiver of public moneys, appointed by the legislature, or by the governor, by and with the advice and consent of the senate, or of both branches of the legislature, whenever it appears to him by competent evidence that either of such officers have been guilty of malfeasance or nonfeasance in the performance of his official duties, first giving to such officer a copy of the charges against him, and an opportunity to be heard in his defense."

By chapter 45, p. 67, Laws of 1868, the word "auditor" was added after the word "coroner" and, as thus amended, the section appeared without change in the General Statutes of 1878, as section 3, chapter 9.

Chapter 21, p. 40, Laws of 1881, amended section 3 so as to read as follows:

"The Governor may remove from office any clerk of the supreme or district court, judge of probate, court commissioner, sheriff, coroner, auditor, register of deeds, county attorney, county superintendent of schools, or county commissioner, county treasurer or any collector, receiver or custodian of public moneys whenever it appears to him, by competent evidence that either of such officers have been

guilty of malfeasance or nonfeasance in the performance of his official duties, first giving to such officer a copy of the charges against him, and an opportunity to be heard in his defense."

Chapter 21 was carried into the revision of 1905 with a few verbal changes of no importance and appears there as section 2668. Chapter 462, p. 670, Laws of 1913, added to the list of officers judges of municipal courts and justices of the peace, and, with this amendment, the law appears in G. S. 1913, as section 5724. Section 58, G. S. 1913, empowers the Governor to appoint officers whose election is not otherwise provided for by law, and at his pleasure to remove appointees whose term of service is not by law prescribed, and declares that he shall exercise such powers of appointment, suspension and removal in respect to other officers as are conferred on him by law.

Whether the motion should be granted or denied depends on the answer to this question: If the matters set forth in the information and writ should be established by competent evidence at the hearing before the Governor, would he have authority under section 5724 to remove respondent from office? The answer depends on the interpretation of the statute. If the language of section 5724 is plain and unambiguous, there is no room for construction, for a statute must be given effect according to its terms if the meaning of the language is unmistakable. In their literal sense the words "any collector, receiver or custodian of public moneys" are comprehensive enough to include city, village, town and school district officers who handle public funds. But it is not plain and certain that the legislature used them in this sense. It is our duty to endeavor to ascertain the legislative intention as expressed in the language used and to give it effect, for the statute is to be viewed in the light of such intention and is not to be construed according to the letter. 3 Dunnell, Minn. Dig. §§ 8940, 8943. To ascertain the intention of the lawmakers, we may properly consider the history and evolution of the statute.

As already stated, the words in question were introduced by the amendment of 1881. They were substituted for the words "any

collector or receiver of public moneys appointed by the legislature or by the Governor, etc.", as the same had appeared in the statute since territorial days. The territorial statute was inherited from Wisconsin and by Wisconsin from Michigan. See section 13, chapter 15, R. S. Mich. 1846, and section 7, chapter 11, R. S. Wis. 1849. Section 1, art. 2, chapter 4, R. S. Minn. 1851, required the Governor to appoint a territorial treasurer by and with the advice and consent of the council. Manifestly section 5 of chapter 10 referred to that officer. After Minnesota was admitted to statehood, section 5 could have no application to the office of treasurer, for that officer was elected by the people and could only be removed by impeachment. There may have been other officers appointed by the Governor who collcted or received public moneys to whom the statute was applicable, as, for example, the warden of the State Prison. G. S. 1878, c. 120, § 51.

Prior to 1881, it is clear that there was no grant of authority to the Governor to remove a municipal officer who collected or received municipal funds only. Both before and after that time, when the legislature created a city or village by special act, it lodged the power to remove municipal officers with the city or village council. In view of this fact, can it be said that by the amendment of 1881 the legislature intended to invest the Governor with concurrent power? If so, there are two methods of procedure, an overlapping of jurisdiction and the possibility of a conflict of action between the Chief Executive and the local authorities in a matter which is of local rather than of general concern. In delegating the power to control its own officers to the local government, the legislature pursued a policy followed more or less consistently throughout the United States since the New England states were organized, for local self-government has been regarded as the best form of government for the political subdivisions of the state. The doctrine that local self-government is fundamental in American political institutions; that it existed before the states adopted their constitutions and that it is more than a mere privilege conceded by the legislature in its discretion is ably discussed in People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103, and in People v. State Board, 174 N. Y. 417, 67

N. E. 69. It is advocated by Judge Cooley in his treatise on Constitutional Limitations, p. 223, indorsed in Black, Const. Law, p. 504, and referred to in St. Paul & Sioux City R. Co. v. Robinson, 40 Minn. 360, 367, 42 N. W. 79, with approval.

The legislature has rarely withdrawn from municipal corporations the control of their own affairs and transferred it to a department of the state government. The amendment to the Constitution whereby cities and villages were empowered to frame charters for their own government illustrates the policy the state has adopted. Section 36, article 4, of the state Constitution contains the following provision:

"Before any city shall incorporate under this act the legislature shall prescribe by law the general limits within which such charter shall be framed."

Pursuant thereto, the legislature enacted sections 1342-1360, G. S. 1913. Section 1345 declares:

"Subject to the limitations in this chapter provided, it may provide for any scheme of municipal government not inconsistent with the constitution, and may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions, as fully as the legislature might have done before the adoption of sec. 33, art. 4, of the constitution."

And section 1358, that

"Such board of freeholders may also provide for the re-call of any elective municipal officer and for his removal by vote of the electors of such city."

In adopting the charter of Eveleth, the people had all the legislative power possessed by the legislature of the state with respect to every matter of municipal concern, save as such power was expressly or impliedly withheld, Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627, and the charter had all the force and effect of a legislative enactment. State v. Zimmerman, 86 Minn. 353, 90 N. W. 783, 58 L. R. A. 78, 91 Am. St. 351. The charter was adopted

October 15, 1913. For present purposes and in a limited sense it must be taken as the last expression of the legislative will. It provides for the removal of the chief officers of the city, not including the mayor, by a majority vote of the council. Elective officers may be removed by a recall. In this connection it is urged that we have here the last legislative enactment dealing with the removal of municipal officers in this particular municipality and that, whatever the construction of section 5724 may be, the constitutional amendment, the subsequent acts of the legislature, and the local legislation by which the charter became effective, withdrew the city from the purview of the section. Hodges v. Tucker, 25 Idaho, 563, 138 Pac. 1139, is cited on this point and lends support to this contention. All the matters to which we have referred must be taken into consideration. They throw light on the purpose of the amendment of 1881 and show how the legislature has since dealt with the subject of the amendment, in legislating for cities and villages.

In our search for the legislative intention, we should also give some weight to the maxim of construction, noscitur a sociis. Without exception, the officers named in section 5724 are state or county officers, for even the judges of the municipal courts have been held to be state officers. State v. Fleming, 112 Minn. 136, 127 N. W. 473, and justices of the peace are not local officers and their courts are state courts. State v. Dreger, 97 Minn. 221, 225, 106 N. W. 904. The general language to be construed follows, is associated with and is a part of the context of, a statute in which none of the officers particularly mentioned are city or village officers. This lends color to the claim that it was intended that only collectors, receivers or custodians of state or county funds should be included in the class described by the general language.

State v. Robinson, 101 Minn. 277, 112 N. W. 269, 20 L. R. A. (N. S.) 1127, does not go so far as to hold that the mayor of a city may be removed from office in a proceeding instituted by the state whenever he is charged with a wilful disregard of his official duties. In that case the statute made it the duty of mayors to make complaint to the proper magistrate for every known violation of the liquor laws and declared the neglect of that duty to be malfeasance in office

subjecting them to removal. The court said that a municipal corporation has a double character. As respects its local affairs, it is an independent corporation in no way subject to the control or supervision of the state, but insofar as the general laws of the state operate and have force and effect within the municipality and its officers are charged with their enforcement, they are the agents of the state government and subject to its command and control. It was remarked that the efficient administration of a law adopted for the welfare of the state at large renders it imperative that the state should possess and exercise this control, and the conclusion was reached that the state, when creating a municipal subdivision for local self-government, retains this general supervisory control of its affairs. This is not a parallel case. The people of the state have a direct interest in the control and expenditure of state funds, but their interest in the expenditure of municipal funds is remote and shadowy. An unfaithful custodian of a city's money may inflict financial injury upon the inhabitants of the city. There are excellent reasons why they should have the power summarily to remove him from office, but little or no reason for interference by the state under the guise of promoting the general welfare.

These views lead to the conclusion that section 5724 should not be construed to authorize the Governor to remove from office a collector, receiver or custodian of the public moneys of a city and, therefore, the motion to quash must be granted.

Writ quashed.

STONE, J.

I agree that the members of the legislature of 1881 would have been shocked had they been told that, by their recasting of the law, they had swept into the State Capitol all the troubles municipalities may have with their officers. In those days we had not gotten nearly so far from our original notions of local self-government as we have now.

I cannot agree at all with the argument that a home rule charter can impinge in any way upon a general law. Such charters are legislation, of course, but of a kind inferior to that of the legislature. Therefore, in case of conflict, the latter should prevail.