## STATE EX REL. J. L. DANN v. R. H. HUTCHINSON AND OTHERS.[1]

December 8, 1939.

No. 32,344.

*E. H. Nicholas* and *Lowell Nicholas,* for relator.

*J. A. A. Burnquist,* Attorney General, *Edward J. Devitt,* Assistant Attorney General, and *Karl L. Rudow,* City Attorney, for respondents.

STONE, JUSTICE.

The one question presented by this alternative writ of prohibition is whether the council of the city of Jackson has the power to remove relator from his office of justice of the peace.

Relator was reëlected in April, 1939, for a two-year term. In October, respondents, the members of the city council, summoned him to appear before them for hearing on charges preferred in a removal proceeding. Before that hearing our alternative writ issued.

[1]Reported in 288 N. W. 845.

Minn. Const. art. 13, § 1, provides for removal of state officers. In enumerated cases impeachment is the method. There follows, in § 2, this proviso:

"The legislature of this state may provide for the removal of inferior officers from office, for malfeasance or nonfeasance in the performance of their duties."

2 Mason Minn. St. 1927, § 6954, embodies the legislative exercise of the power thus granted. Thereby the governor is given power to remove various officials, including justices of the peace. The history of this statute is reviewed in State ex rel. Hilton v. Essling, 157 Minn. 15, 195 N. W. 539.

The city of Jackson is a home rule city. Its charter was adopted pursuant to constitutional authority. Minn. Const. art. 4, § 36, declares that:

"Any city or village in this state may frame a charter for its own government as a city consistent with and subject to the laws of this state * * * Before any city shall incorporate under this act the legislature shall prescribe by law the general limits within which such charter shall be framed. * * * but such charter shall always be in harmony with and subject to the constitution and laws of the state of Minnesota. * * * The legislature may provide general laws relating to affairs of cities, * * * which shall be paramount while in force to the provisions relating to the same matter included in the local charter herein provided for."

The legislature, 1 Mason Minn. St. 1927, § 1271, has enacted that a home rule charter "may provide for any scheme of municipal government not inconsistent with the constitution, and may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions, as fully as the legislature might have done before the adoption of section 33, article 4 of the constitution." (The section prohibiting special legislation, effective November 8, 1881.)

448

·The charter of Jackson provides for election of justices of the peace, among other officers. Section 5. Section 11 reads as follows:

"Any elective or appointive officer, provided for by this Charter, may be removed from his office by the affirmative vote of two-thirds of all the members of the council."

It is under that charter provision, and not otherwise, that respondents propose, if cause is shown, to remove relator. Our holding is that amotion of justices of the peace is, as matter of general state law, beyond the power of the council of the city of Jackson, and that the attempt by the charter to confer such power is without effect.

■ The first step of consideration toward that result is the proposition that, however local its operation may be in most cases, the administration of justice is a state affair. State ex rel. Rosckes v. Dreger, 97 Minn. 221, 106 N. W. 904. Justices of the peace were provided for by the constitution as part of the judicial department. So they have long been considered state officers. "Their courts are state courts." State ex rel. Hilton v. Essling, 157 Minn. 15, 21, 195 N. W. 539; State ex rel. Rosckes v. Dreger, *supra.*

■ As appears above, the constitutional authority for home rule charters is transgressed if and to the extent that they overreach local municipal government or become inconsistent with the laws of the state. So, in State ex rel. Simpson v. Fleming, 112 Minn. 136, 127 N. W. 473, we held that the charter of the city of Virginia could not legislate out of office or shorten the term of a special municipal judge. And in Hjelm v. City of St. Cloud, 129 Minn. 240, 243, 152 N. W. 408, we had to nullify a charter to the extent that it went beyond municipal affairs by the attempted localizing of all actions against the city. We held that such a charter attempt "should not control those actions which, in equally strong terms, the legislature by general law, have assigned" to a forum other than that designated by the charter. Here we have a subject, removal of justices of the peace, which,

under express constitutional authority, the legislature has assigned to the governor. It is one which, however local in much of its operations on citizens, is yet in character and importance a matter of state interest. Being so, and the legislature having, by general law, conferred the power of removal upon the governor, we consider the attempt by the charter to place the power of removal elsewhere to be a transgression of that law. Insofar as it is, we must hold the charter of no effect.

Our attention is invited to 1 Mason Minn. St. 1927, § 1828-25. It is part of the "General Incorporation Act for Cities of Fourth Class" and provides that all officers are subject to removal by a two-thirds vote of all the aldermen. That includes, we assume, justices of the peace and municipal judges. It is a declaration by the legislature as to state policy, and so controls within its limited field. Outside that field, that is, as to cities not incorporated thereunder, it remains the law that the power to remove justices rests with the governor. Because of their character as state officers; because of the jurisdiction of their courts, which normally is coextensive with the county, we consider the governor's power of removal exclusive.

In State ex rel. Young v. Robinson, 101 Minn. 277, 112 N. W. 269, 20 L.R.A.(N.S.) 1127, it was held that, for violations of the state laws for control of the liquor traffic, the attorney general had a power of removal (of a mayor) concurrent with that of the city council. That was because, in addition to his duties under the local charter and ordinances, the mayor had a special duty to the state, expressly superimposed on his local duties by a state law. To that special state duty was attached the sanction of removal by the attorney general. Of course the latter, in its limited field, was held concurrent with that of the city—for reasons not present here.

Ingenious but not persuasive is a final argument for respondents. It is that while the governor has the power, under constitution and statute, to remove for "malfeasance or nonfeasance," the city council has the additional power to remove him [the justice of the peace] for any other "cause." If there ever was any ground

for amotion not included by the general terms "malfeasance or nonfeasance" (which we doubt), the fact remains that neither constitution nor statute recognizes any other ground. So as to a state officer, even a justice of the peace, the common council of Jackson has no power to remove for "cause" if there be any other than "malfeasance or nonfeasance."

Writ of prohibition made absolute.